**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| TAMMY ALLEN, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 3:04-CV-00642 (PCD) |
| | : | |
| V. | : | |
| | : | |
| MENTOR CORPORATION | : | MARCH 18, 2005 |
| | : | |
| Defendant. | : | |
| | : | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

The undersigned Plaintiff, Tammy Allen, respectfully submits the following as

her opposition to Defendant's, Mentor Corporation's, Motion for Summary Judgement

dated February 10, 2005.

This product liability action arose by Plaintiff's complaint dated March 15, 2004

pursuant to Connecticut General Statutes Section 52-572m, et seq., the Connecticut

Product Liability Act, alleging, inter alia, that a tissue expander manufactured by the

Defendant, Mentor Corporation, was defective and deflated causing Plaintiff damages.

Now, Defendant, Mentor Corporation, moves for summary judgment on the complaint described above, alleging that the Plaintiff has failed to show that the product was defective.  Accordingly, the undersigned Plaintiff opposes Defendant's motion for summary judgment.

## STANDARD OF REVIEW

The moving party for summary judgment must show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. Pro. 56(c).  Summary judgment is proper when reasonable minds could not differ as to the import of evidence.  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  "The party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . .In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts . . . A motion for Summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact." (citation omitted) (internal quotations omitted.) Rosato v. Mascardo, 82 Conn. App. 396, 400 (2004).

**ARGUMENT**

I.   **PLAINTIFF'S PRODUCT LIABILITY CLAIM SURVIVES AS A MATTER OF LAW BECAUSE PLAINTIFF HAS PROVEN DEFECT.**

The Plaintiff brings a product liability claim against the Defendant, Mentor, pursuant to the Connecticut Product Liability Act.  See Connecticut General Statue § 52-572m, et seq.  The Plaintiff survives summary judgment because she has proven that the tissue expander manufactured by Mentor possesses the following three types of defects of which only one is necessary: (a) manufacturing defect; (b) a warning defect; and (c) a design defect.

Under the doctrine of strict liability in tort, the jury can find sufficient evidence upon which to hold the defendant liable for damages caused by its defective product.  The law in Connecticut states, "[w]here the liability is fundamentally founded on tort rather than contract there appears no sound reason why the manufacturer should escape liability simply because the injured user, a party in the normal chain of distribution, was not contractual privity with it by purchase and sale."  Potter v. Chicago Pneumatic Tool Company, 241 Conn. 199, 214 (1997).  To recover under the doctrine of strict liability in tort, the plaintiff must prove that "(1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to

and did reach the consumer without substantial change in condition." <u>Giglio v.</u>

<u>Connecticut Light & Power Co</u>., 180 Conn. 230, 234 (1980).

  The parties are not in dispute that the Defendant was in the business of selling the

product.  The parties dispute whether the product was in a defective condition causing it

to be unreasonably dangerous to the consumer or user. [1]  "In this regard, it is important to

note that it is not necessary that the plaintiff in a strict liability tort action establish a

specific defect, so long as there is evidence of some unspecified dangerous condition.

<u>Giglio v. Connecticut Light & Power Co.</u>, 180 Conn. 230, 234-235 (1980).  "Whether a

product is unreasonably dangerous is a question of fact to be determined by the jury."[2]

<u>Id</u>. at 235.  "As we have recently stated, '[t]his includes those questions arising under §

402A and the jury can draw their own reasonable conclusions as to the expectation of the

---

[1] "Comment I of the Restatement (Second) of Torts, § 402A, defines an 'unreasonably dangerous' product as one 'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.'" <u>Giglio v. Connecticut Light & Power Co.</u>, 180 Conn. 230, 234 (1980).

[2] "Connecticut courts [] have consistently stated that a jury may, under appropriate circumstances, infer a defect from the evidence without the necessity of expert testimony." <u>Potter v. Chicago Pneumatic Tool Co.</u>, 241 Conn. 199, 218 (1997).  <u>See, e.g.</u>, <u>Standard Structural Steel Co. v. Bethlehem Steel Corp.</u>, 597 F.Supp. 164, 183 (D. Conn. 1984) (recognizing Connecticut law permits fact finder to draw inferences of defect from circumstantial evidence); <u>Living & Leaning Centre, Inc., v. Griese Custom Signs, Inc</u>., 3 Conn. App. 661, 664, 491 A.2d 433 (1985) ("It is not necessary that the plaintiff in a strict tort action establish a specific defect as long as there is evidence of some unspecified dangerous condition").

ordinary consumer and the knowledge common in the community at large.'" Id. (quoting,

Slepski v. Williams Ford, Inc., 170 Conn. 18, 23, 264 A.2d 175.

Other ". . .relevant factors that a jury *may* consider include, but are not limited to,

the usefulness of the product, the likelihood and severity of the danger posed by the

design, the feasibility of an alternative design, the financial cost of an improved design,

the ability to reduce the product's danger without impairing its usefulness or making it

too expensive, and the feasibility of spreading the loss by increasing the product's price."

Potter v. Chicago Pneumatic Tool Co., 241 Conn. 199, 221 (1997).

Whether Defendant's tissue expander is unreasonably dangerous is a question of

fact to be determined by the jury.   The Plaintiff states in her complaint that ". . . said

product was in a defective and unreasonably dangerous condition and could not be used

without reasonable risk of injury to the plaintiff."  See Plaintiff's Complaint, p. 2, n. 4(a).

The plaintiff reiterates her claim during her deposition:

> **Q:    Miss Allen, before we go too much further I want to try and
> understand what your claim is about with Mentor Corporation.  As I
> understand it, and let me know if I'm wrong, you are suing mentor
> because in March of 2002 you received a Mentor tissue expander and
> the left one deflated; is that correct?**
>
> **A:    Correct.**

The condition of the tissue expanders was unreasonably dangerous and defective.  The

Plaintiff during her deposition testified that she was lead to believe that the tissue

expanders would be safe because they were the self-sealing kind.  Plaintiff's Depo., p. 75,

lines 1-20.  Under "the 'consumer expectation' test, a manufacturer is strictly liable for

any condition not contemplated by the ultimate consumer that will be unreasonably

dangerous to the consumer."  Potter  v. Chicago Pneumatic Toll Co., 241 Conn. 199, 211-

212 (1997).  Plaintiff had a reasonable expectation that any injections made by the

physician within the self-sealing area would not leak.  The narrow palpation ring, which

surrounds the injection dome, is located between two areas designated as self-sealing.

Defendant claims in its product insert data sheet (PIDS) that any injection on the

palpation ring may cause leakage.  The location of this palpation ring renders the product

unreasonably dangerous and not self-sealing.

   Thus, Plaintiff's claim of defect is maintained by the fact that the expander was

believed to be self-sealing in the area where Dr. Foster made the injections.

> **Q:     You still think it's defective if it's stuck 7 times with a needle where
> it's not supposed to be stuck?**
>
> **A:     If it's supposed to be a self-sealing expander, yes.**

Plaintiff's Depo., p. 102, lines 2-5.  Plaintiff's treating doctor, Dr. Foster, will testify to

the expander's defects in design (Dr. Foster's Depo., p. 9, lines 1-14; p. 11, lines 16-20)

and negligence by Mentor in providing inadequate warnings and instructions regarding

not injecting on or around the edge of the palpation ring on the expanders (Dr. Foster's

Depo., p. 14, lines 5-10).  The lack of adequate warnings and instructions renders

Defendant's product unreasonably dangerous.  In this case, the determination of whether

the tissue expander is unreasonably dangerous is a fact better left to the jury.

     Plaintiff will show that the defect in the tissue expander caused Plaintiff's injuries

for which compensation is now sought; that the tissue expander defect existed at the time

of sale; and that the tissue expander was expected to and did reach the consumer without

substantial change in condition.

## II.    PLAINTIFF HAS PROVEN THAT DEFENDANT'S EXPANDER HAS A MANUFACTURING DEFECT

     Plaintiff can prove that Defendant's expander has a manufacturing defect.  "By

its terms, Comment k excepts unavoidable unsafe products from strict liability only

where the plaintiff alleges a design defect, and not where the plaintiff alleges a

manufacturing flaw or an adequate warning.  Comment k intends to shield from strict

liability products which cannot be designed more safely; however, if such products are

mismanufactured or unaccompanied by adequate warnings, then the seller may be liable

even if the plaintiff cannot establish the seller's negligence.  Courts and commentators

universally agree to this limitation on comment k's grant of immunity from strict

liability."  Transue v. Aesthtech Corp., No. 01357773 (9th Cir. 2003).

     Plaintiff's expander was defective when it leaked from injections made into the

area on the expander that was to be self-sealing.  The product insert data sheet (PIDS) for

the Mentor tissue expander, provided by the Defendant, states that, "[t]he device has an integral, silicone elastomer, magnetically detected, injection site, and incorporates a ***self-sealing technology*** (containing silicone oil) to the front patch of the device in order to minimize and/or prevent device leakage in the event of an accidental needle puncture." (emphasis added) PIDS, p. 1.   The PIDS then states under its warnings for proper filling, "Although the device has a self-sealing area around the injection dome, DO NOT ATTEMPT TO INJECT INTO THE AREA AROUND THE DOME, as damage to the device may occur." Id., p. 2.

Plaintiff's expanders were sent back to Mentor for an evaluation. The evaluation conducted by Mentor of Plaintiff's two expanders reported that in Device A, "[a]pproximately 7 puncture sites were observed on the edge of the palpation ring. Approximately 8 puncture sites were within the palpation ring."[3] See, Mentor's Evaluation, p. 1.  Device A reports leakage from the rents on the edge of the palpation ring.  Id.  Assuming that the injections on the rents of the palpation ring were caused by Dr. Foster's injections, the expander should have been self-sealing in the area around the injection dome.  Mentor's tissue expanders claim to incorporate a self-sealing technology to the front patch of the device to minimize and/or prevent device leakage in the event of needle punctures, but it failed to do so.  Contrary to Mentor's representations that the

device has a self-sealing area around the injection dome, the Plaintiff's expander still

leaked.  The mere fact that the Plaintiff's expander leaked in the area where the device

was incorporated with self-sealing technology, is evidence of a manufacturer defect.

### III.   PLAINTIFF HAS PROVEN THAT DEFENDANT'S EXPANDER HAS A WARNING DEFECT

Plaintiff can prove her claim by expert testimony that Mentor's warnings or

instructions to physicians are inadequate precluding Defendant's motion for summary

judgment.  Even if this Court finds a genuine issue of material fact existed as to whether

the manufacturer satisfied its duty under the learned intermediary doctrine to warn a

physician, then Defendant's motion for summary judgment must still be precluded.  See

Desmarais v. Dow Corning Corp., 712 F. Supp.2d 13 (1989).

The defendant manufacturer has a legal duty to warn the prescribing physician,

rather than the patient, of the risk inherent in the use of its product.  Id.  "The doctrine is

based on the principle that prescribing physicians act as 'learned intermediaries' between

a manufacturer and consumer and, therefore, stand in the best position to evaluate a

patient's needs and assess risks and benefits of a particular course of treatment."  Id.; See

Basko v. Sterling Drug, Inc., 416 F.2d 417, 426 (2d Cir. 1969).  Notably, "[w]arnings to

the medical profession generally rather than to individual prescribing physicians would

---

[3] Device B shows approximately 7 puncture sites were within the palpation ring.

be illogical and contrary to the very policy and purpose underlying the learned

intermediary doctrine and the duty to warn.  Unless the individual prescribing physician

receives specific, relevant warnings, [he] cannot make a careful, balanced assessment of

the risks and benefits to [his] patient, nor can the patient herself be adequately informed."

Desmarais v. Dow Corning Corp., 712 F.Supp.2d 13 (1989).

  In the case of Demarais, "it [was] clear that some sort of literature accompanied

the implants and was read by plaintiff's physician . . . . The record does not indicate the

content of that literature, however, or whether it provided warnings of rupture such as

occurred here."  Id.  The Court in that case found a genuine issue of material fact as to

whether the defendant satisfied its duty to warn the physician and accordingly found

summary judgment inappropriate on that issue.  "The existence of a duty is a question of

law and only if such a duty is found to exist does the trier of fact then determine whether

the defendant violated that duty in the particular situation at hand. . . ." (Internal

quotations omitted)(internal citations omitted) Vitanza v. The Upjohn Co., 257 Conn.

365, 389 (2001).

  Similarly, in the instant case, this Court can find that a genuine issue of material

fact exists.  Plaintiff's surgeon was never adequately provided with any instructions or

warnings regarding the risk of leakage from injections on the palpation ring, also referred

---

Mentor's Evaluation, p. 1.

to as the interface zone, thus making the product defective.  See <u>Vitanza  v. The Upjohn</u>
<u>Company</u>, 257 Conn. 365, 373 (2001) (<u>citing</u>, <u>Koonce v. Quaker Safety Products & Mfg.</u>
<u>Co.</u>, 798 F.2d 700, 716 (5th Cir. 1986) ("[t]he absence of adequate warnings or directions
may render a product defective and unreasonably dangerous, even if the product has no
manufacturing or design defects").

Plaintiff's surgeon, Dr. Foster, testified that he was not provided with warnings of
the possibility of leakage on or outside the palpation ring area (interface zone).  Dr.
Foster testified to the following during his deposition.

> **The problem is that, after this entire thing happened, I spoke to one of
> the reps about this, and I was told that if this expander is injected
> with saline in the interface I spoke about before that that area will
> leak.  *And that wasn't something that was explained to us before at all.*

(emphasis added) (Depo. of Dr. Foster, p. 12-13 at lines 21-25, 1)

> **Q:    Doctor, do you intend to provide any testimony that Mentor was
> negligent with respect to Miss Allen's tissue expander?**

> **A:    I think negligent in not providing information about this interface
> zone where the expander could leak from.**

(DOF, p. 14 at lines 5-10).

Plaintiff's physician was not only inadequately warned, but was never warned that
***injections made on or outside the palpation ring*** would cause deflation or leakage.  The
doctor testified that he obtained his information about warnings "[f]rom meetings I go to,
the Plastic and Reconstructive Surgery Journal, and also the FDA web site, and other

information as provided by the implant company's brochures and pamphlets."  Depo. Dr.

Foster, p. 65 at lines 19-22.  Dr. Foster also stated that he relies on his experience as a

plastic surgeon and communications with other plastic surgeons.  Id. p. 65-66.  Therefore,

Plaintiff can prove her claim that Defendant's product has a warning defect.  At the very

least, the Plaintiff can undoubtly show that there exits a genuine issue of material fact as

to whether the manufacturer satisfied its duty.

Defendant claims that Plaintiff's physician was adequately warned about the

"potential risks associated with the expander in its FDA-approved Product Insert Data

Sheet ("PIDS), which accompanied every set of tissue expanders Mentor sold." Memo. of

Law in Supp. of S.J., p. 7).  The **only** reference made by Defendant that the warning

regarding injection made on or outside the palpation ring would cause deflation or

leakage appears in the PIDS.  However, if the PIDS never reaches the physician, then the

physician has not been adequately warned.  The mere fact that this warning only appears

in the PIDS and in no other materials, despite its importance, proves inadequate warning.

> **Q:**   **Doctor, I'm handing you what's been marked Exhibit 6. (Handing.) If you could please take a look at that and let me know if you've recognized - - if you recognize that document.**
>
> **A:**   **I don't recognize it, no.**
>
> **Q:**   **Okay.  For the record, this is the Mentor product insert data sheet for the contour profile tissue expander.  That's the tissue expander that Miss Allen had in this case, correct?**

**A:     Yes.**

(Dr. Foster's Depo., p. 66-67 at lines 18-25, 1).

The Defendant represents to Dr. Foster that this was the product insert data sheet in effect at the time that Plaintiff had her surgery and claims that the PIDS would have been included in the box with the tissue expanders that she received.  (DOF, p. 67 at lines 6-9).  With that representation, Dr. Foster is questioned on his office's policy and procedure for the PIDS located inside the box of tissue expanders.  Id. at lines 13-15.  Dr. Foster testifies that there is no policy or procedure since the box of tissue expander is  ". . . generally opened up in the operating room" and he subsequently has no knowledge of what happens to the PIDS upon opening the box of tissue expanders in the operating room.  Id. at 18-22.  Neither is there testimony as to who is responsible for opening the package in the operating room.

Thus, there was no warning provided by the defendant regarding the potential risk of deflation or leakage from injecting on or outside the ring to Plaintiff's physician.  The only claim of such warning by Defendant is in the PIDS, the same sheet contained within the products packaging, which as Dr. Foster testified to is only opened in the operating room.  Not only is Mentor's sole warning, which appears only in the PIDS, inadequate, but it does not reach the physician when it is packaged as such.  It would be against public policy to expect or require a physician to carefully read a PIDS sheet immediately

before performing an operation.  This type of requisite warning should be provided to, disclosed to, and made available to all physicians prior to the opening of a package in the operating room.  Thus, there is a genuine issue of material fact and the Plaintiff has a right to have factual issues resolved by the jury.

Plaintiff can demonstrate that adequate warnings would have changed Dr. Foster's conduct, so as to avoid Plaintiff's injuries.  In viewing the evidence in the light most favorable to the Plaintiff, this court can find that a fair and reasonable person can conclude that a warning would have altered the surgeon's behavior.   The Plaintiff's doctor, since learning of the possibility of leakage from injections on or outside the palpation ring, has changed his conduct.  During Dr. Foster's deposition, he testified that, "We have used this expander since the problem with [the Plaintiff], but what I've done is mark on the external skin exactly where the port is." Dr. Foster's Depo., p. 34, lines 3-5. This is something Dr. Foster had not done prior to the incident with the Plaintiff.  Id. p. 34 at 6-8.  Dr. Foster acknowledges the expanders defect around the ring area, but he now marks the area so not to get anywhere near where that external ring is.  Id. p. 35 at 6-9. Moreover, Dr. Foster testifies that everyone of his patients, except the Plaintiff have not had any similar issues with the expanders, since Dr. Foster changes his conduct.  Dr. Foster's change in conduct, after learning of the injury from injections on the palpation ring, demonstrates that adequate warnings would have avoided Plaintiff's injuries.  Thus,

there exists a genuine issue of material fact as to whether defendant satisfied its duty to warn the physician making summary judgment inappropriate.

## IV.   PLAINTIFF HAS PROVEN THAT DEFENDANT'S EXPANDER HAS A DESIGN DEFECT

Plaintiff can prove that Defendant's expander has a design defect.  "A product may be in a defective condition unreasonably dangerous to the user even though no feasible alternative design is available.  In such instances, the manufacturer may be strictly liable for a design defect notwithstanding the fact that there are no safe alternative designs in existence."[4] Potter  v. Chicago Pneumatic Tool Co., 241 Conn. 199, 219 (1997).

---

[4] See e.g., O'Brien v. Muskin Corp., 94 N.J. 169, 184, 463 A.2d 298 (1983) ("other products, including some for which no alternative exists, are so dangerous and of such little use that . . .a manufacturer would bear the cost of liability of harm to others"); Wilson v. Piper Aircraft Corp., 282 Or. 61, 71 n.5, 577 P.2d 1322 (1978) ("Our holding should not be interpreted as a requirement that [the practicability of a safer alternative design] must in all cases weigh in [the] plaintiff's favor before the case can be submitted to the jury.  There might be cases in which the jury would be permitted to hold the defendant liable on account of dangerous design feature even though no safe design was feasible (or there was no evidence of a safe practicable alternative)"); Sumnicht v. Toyota Motor Sales, U.S.A., Inc., 121 Wis. 2d 338, 371, 360 N.W.2d 2 (1984) ("[a] product may be defective and unreasonably dangerous even though there are no alternative, safer designs available").

Dr. Foster copiously and unwaveringly stated, during his deposition, that the Mentor Expander was defective in its design and confirmed that he would provide testimony to that fact.

> **Q:** **What is the problem with the expander?**
>
> **A:** **The problem with the expander is that, the way the expander is set up, it has a ring in the center with a silicone surface on the top, and there's metal behind it to prevent the needle from going in to the expander itself, and then there's a patch around the entire area that is a self-sealing patch, so that if the needle was placed outside of the ring and into this patch that it would be self-sealing and the person wouldn't have a leak.**
>
> **Q:** **Okay.**
>
> **A:** **The problem with her implant was several of the needle sticks were made at the interface between the ring and this patch, and that's an area where the expander can leak from.**

(Dr. Foster's Depo., p. 9, lines 1-14).

> **A:** **I think there's a defect in the design of the implant itself - - or the expander itself.**
>
> **Q:** **Okay. So you're saying that you believe there is a defect in the design of the expander?**
>
> **A:** **Yes.**

(Dr. Foster's Depo., p. 11, lines 16-20)

> **Q:** **And I think what you just said you intend to provide some testimony that Miss Allen's tissue expander contained a design defect?**

16

**A:      Yes.**

**Q:      Could you explain for me what that design defect is?**

**A:      The way the expander was promoted to plastic surgeons was that, because of the - - just having the diaphragm where the injection would go, there's always a possibility of having the needle go outside of that area, so this expander was designed so that a needle was stuck outside of this - - where the injection site is, that the expander would be protected and self-sealing.  The problem is that, after this entire thing happened, I spoke to one of the reps about this, and I was told that if this expander is injected with saline in the interface I spoke about before that that area will leak.  And that wasn't something that was explained to us before at all.**

The doctor stated "[w]e have used this expander since the problem with Tammy Allen [, the plaintiff,], but what I've done is mark on the external skin exactly where the port is."  Depo. of Dr. Foster, p. 34, lines 3-5.  "The problem with the expander . . . is it's around where the ring is.  And what I've tried to do, since I like to use these expanders, is to mark in the center now, so that I don't get anywhere near where the external ring is."  Depo. of Dr. Foster, p. 35, lines 5-9.

Defendant misrepresents in its memorandum of law in support of its motion for summary judgment that "[] Plaintiff does not have an engineer, a design expert, or anyone else to testify that the tissue expander's design is defective."  Def. Mot. For S. J., p. 9.  Clearly, Dr. Foster's testimony in his deposition, noted above, repeatedly states that he will testify to the expander's design defect.   Therefore, the Defendant misrepresents

in his memorandum that the Plaintiff does not have anyone else to testify that the tissue

expander's design is defective.

Defendant notes the state of the art "rebuttal evidence" in its motion for summary

judgment. Def. Mot. For S.J., p. 11-12. State of the art relates to the condition of the

product and the possibility that it could have been made safer.[5] Potter v. Chicago

Pneumatic Tool, 241 Conn. 199, 250 (1997). Therefore, Connecticut courts have

considered this defense as a "relevant factor in considering the adequacy of the design of

a product and whether it is in a defective condition unreasonably dangerous to the

ordinary consumer." Id. "Compliance with state of the art would not, as a matter of law,

warrant a judgment for defendant. Id. at 253. (citing O'Brien v. Muskin Corp., supra, 94

N.J. 183-84. "For this reason, we believe that state-of-the-art evidence is better

characterized as rebuttal evidence than as a defense . . . . [and] that state-of-the-art

evidence is merely one factor for the jury to consider . . . ." (internal quotations omitted)

(citation omitted). Potter, 241 Conn. at 253.

Dr. Foster throughout his deposition identifies the problem with the palpation

ring. The palpation ring needs to be self-sealing like the injection dome it circles. Dr.

---

[5] State of the art is characterized as the level of relevant scientific, technological and
safety knowledge existing and reasonably feasible at the time of the design. Potter v.
Chicago Pneumatic Tool, 241 Conn. 199, 250 (1997). "Furthermore, we point out that
state of the art refers to what is technologically feasible, rather than merely industry
custom." Id.

Foster's Depo., pg. 9, 11, 12, 13, 35.  The tissue expander would have been safer, if Mentor had made its palpation ring self-sealing.  It would have been reasonably feasible at the time of the design to incorporate the palpation ring into Defendant's self-sealing technology, but it was not.  The question of whether or not the Defendant's tissue expander is state of the art is best left to the jury to decide.

**V.      PLAINTIFF'S PRODUCT LIABILITY CLAIM SURVIVES AS A
         MATTER OF LAW ON ALL OF HER OTHER CLAIMS**

**A.      Plaintiff Has Proven Her Negligence Claims**

The elements of a cause of action for negligence are duty, breach, causation and damages.  Coste v. Riverside Motors, Inc., 24 Conn. App. 109, 112 (1991) (citing, Doe v. Manheimer, 212 Conn. 748, 755, 563 A.2d 699 (1989).  "In order for legal causation to exist, actual cause or cause in fact, as well as proximate cause, must be present.  Coste, 24 Conn. App. at 113; Doe v. Manheimer, supra, 757.  "Actual cause requires allegations that state that the particular injury would not have occurred in the precise way that it did occur without the Defendant's conduct."  Coste, 24 Conn. App. at 113.

Proximate cause is defined "as an actual cause that is a substantial factor in the resulting harm."  Id. at 113-114; Doe v. Manheimer, supra, 757.  "The fundamental inquiry in the substantial factor test is whether the harm which occurred was the same general nature as the foreseeable risk created by the Defendant's negligence.  The

determination of proximate cause is ordinarily a question of fact for the trier; it becomes a question of law only when the mind of a fair and reasonable person could reach only one conclusion . . . . The questions should be submitted to the trier of fact if there is room for reasonable disagreement." (internal quotations omitted) (citations omitted) Coste, 24 Conn. App. at 114.

      The Defendant has a duty to the Plaintiff to provide a product free of defects. The Defendant has breached that duty for all of the reasons set forth in Plaintiff's memorandum of law. Defendant's product is within the scope of foreseeable risk. The Plaintiff's doctor, during his deposition, testified that he intended to testify to the Defendant's negligence in not providing information about the interface zone where the expander could leak. Dr. Foster's Depo., pg. 14. The product's defect created that risk. Defendant breached its duty to the Plaintiff by not adequately warning or providing instruction to the physician. The Defendant is negligent in making its product unreasonably dangerous to the consumer.

      Defendant's breach of its duty is the proximate cause of the Plaintiff's injuries. The Defendant's conduct establishes a causal relationship between the harm and the conduct that is not conjectural. Coste, 24 Conn. App. at 115. (citing, Wu v. Fairfield, 204 Conn. 435 , 439, 528 A.2d 364 (1987)). The Defendant's failure to adequately warn the Plaintiff and her physician that injections on the palpation ring will cause leakage was

the substantial factor in causing the Plaintiff damages.  Dr. Foster testified that he changed his conduct as a result of learning that injections on the palpation ring cause leakage.  Dr. Foster's Depo., 35.  As such, Dr. Foster now draws externally on the skin of the patient in order to determine where the ring is located.  Id.    Dr. Foster has not had any other problems with any patients after the Plaintiff.  Thus, but for the Defendant's inadequate warnings the Plaintiff would not have suffered her injuries.  There is a foreseeable risk that a physician would have injected in the area that Dr. Foster did without adequate warning.  In this case, approximately cause may be found.  However, if this Court finds that there is room for reasonable disagreement then this question must be submitted to the trier of fact.

**B.**    **Plaintiff Has Proven Her Express Warranty Claims**

The Defendant breached its express warranties that said product was safe and effective for its intended use. The Defendant's product was defective for all of the aforementioned reasons.  Moreover, Plaintiff testified during her deposition that she saw ads in newspapers for plastic surgeons proudly advertising Mentor products and a poster in Dr. Fosters office that may have been from Mentor.  Plaintiff's Depo., p. 76, 77, lines 1-12.  Therefore, the Plaintiff has already proven her express warranty claim.

**C.**    **Plaintiff Has Proven Her Implied Warranty Claims**

The Plaintiff has proven her implied warranty claim. "The warranty of merchantability is the broadest and most important warranty in the Uniform Commercial Code. A warranty of merchantability is implied in any sale of goods by a merchant seller; the statutory standards for merchantability include, under § 42a-2-314 (2)(c), that the goods be fit for the ordinary purposes for which such goods are used . . . ." Criscuolo v. Mauro Motors, Inc., 58 Conn. App. 537, 545 (2000). The Defendant's expander was unfit for its intended purpose. The intended purpose of the expanders is to be self-sealing in the front patch of the device, in order to minimize and/or prevent device leakage in the event of an accidental needle puncture. The tissue expander did not meet its intended purpose in preventing leakage from a needle puncture, therefore, the Defendant has breached the implied warranty.

### D.      Plaintiff Has Proven Her Misrepresentation Claim

Plaintiff has proven her misrepresentation claim. For all of the aforementioned reasons, the Plaintiff has proven that the expander was defective; that Mentor was negligent in making certain false and misleading representations regarding the safety of the product; that the product-buyer relied upon such representations; and that such reliance was the proximate cause of the Plaintiff's injuries. The Defendant in support of its motion for summary judgment admits as true, Dr. Foster's belief that there was a self-sealing area around the injection site. Def. Mot. For S.J., p. 15. The area around the

injection site would logically include the palpation ring.  However, the only mention of

the palpation ring not being self-sealing is in the PIDS, which had not been seen by the

doctor prior to his deposition.  Thus, Defendant's failure to adequately warn is a

misrepresentation.  Dr. Foster did rely on Defendant's representations in his decision to

purchase the product.  "The way this expander was promoted to plastic surgeons was that,

because of the – just having the diaphragm where the injection would go, there's always a

possibility of having the needle go outside of that area, so this expander was designed so

that a needle was stuck outside of this – where the injection site is, that the expander

would be protected and self-sealing." Dr. Foster's Depo., p. 12-13.  The Plaintiff in turn

relied on this information from her physician.  Dr. Foster's reliance on this representation

that there was a self-sealing area around the injection site was the proximate cause of the

leakage to Plaintiff's expander.  Accordingly, after Plaintiff's injuries, the doctor now

draws externally on the patient's skin in order to avoid at all costs the palpation ring.

Therefore, summary judgment on Plaintiff's claim of misrepresentation would be

inappropriate.


**VI.    PLAINTIFF'S PRODUCT LIABILITY CLAIM SURVIVES BECAUSE
SHE HAS PROVEN PROXIMATE CAUSATION**

Plaintiff's product liability claim survives because she has proven proximate

cause.  "Conclusions of proximate cause are to be drawn by the jury and not by the court

. . . . It becomes a conclusion of law only when the mind of a fair and reasonable man could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier of fact." (internal quotations omitted)(internal citations omitted) Doe v. Manheimer, 212 Conn. 748, 757 (1989).

The "manufacturer's liability is limited only if the subsequent alteration or modification breaks the chain of causation, akin to an intervening superseding cause in negligence law." Potter v. Chicago Pneumatic Tool, 241 Conn. 199, 233 (1997) (citing, Southwire Co. v. Beloit Eastern Corp., 370 F.Sup. 842, 857 n.21 (E.D. Pa. 1974). "In other words, a manufacturer could still be liable because the original defect, although not the sole cause of the accident, would constitute a contributing or concurrent proximate cause in conjunction with the subsequent alteration."[6] (internal quotations omitted)(citations omitted) Potter v. Chicago Pneumatic Tool, 241 Conn. 199, 233-234 (1997).

In this case, the Defendant is still liable because the original defect would constitute a contributing or concurrent proximate cause in conjunction with the subsequent alteration by the doctor's injections.  The original defect was Defendant's

---

[6] "A manufacturer should not escape responsibility for an accident-causing defect-no matter how small a role it played in the actual injury – simply because some alteration was a contributing factor.  If a causal connection exists between the injury and a defect present when the product left the manufacturer's hands, [the manufacturer] should be liable." Id. at 235.

failure to adequately provide warnings and instructions, as well as its design defect for all of the reasons stated above.   A causal connection does exist between the injury and a defect present when the product left the manufacturer's hands, thus making the manufacturer liable.  <u>See</u>,  <u>Potter</u>, 241 Conn. at 235.  There was no subsequent alteration or modification in the chain of causation by the Plaintiff or her doctor.  Alternatively, if this Court finds that fair and reasonable person can disagree then the question is one to be determined by the trier of fact. <u>Doe</u>, 212 Conn. at 757.

The plaintiff must show that the product was intended to and did reach the ultimate consumer without substantial change in condition.  <u>Rossignol v. Danbury School of Aeronautics, Inc.</u>, supra, 154 Conn. 559-60.  Under § 52-572p (a), "the defendant bears the burden of producing evidence of a substantial change – that is, specifying a modification or alteration that was the sole proximate cause, and not merely a substantial contributing factor, of the plaintiff's harm." <u>Potter v. Chicago Pneumatic Tool</u>, 241 Conn. 199, 236 (1997).  If Defendant invokes this defense, the plaintiff must show that the harm would have occurred not withstanding the alteration or modification.  <u>Id</u>. at 237.   "The plaintiff must establish that the alteration or modification: (1) was in accordance with the manufacturer's instructions or specifications; (2) was made with the manufacturer's consent; or (3) was the result of conduct that the manufacturer reasonably should have anticipated." <u>Id</u>.  <u>See</u> General Statutes § 52-572p (a).

A fair and reasonable person will find that Defendant's failure to warn did cause the Plaintiff's injuries. "The issue of causation in warnings cases is governed by § 52-572q (c), which states that 'the [plaintiff] shall prove by a fair preponderance of the evidence that if adequate warnings or instructions had been provide, the [plaintiff] would not have suffered the harm.' Generally, questions regarding the existence of a causal link are reserved for the trier of fact." Haesche v. Kissner, 229 Conn. 213, 218 (1994) (quoting, Mather v. Griffin Hospital, 207 Conn. 125, 130, 540 A.2d 666 (1988).

Dr. Foster's injections on the palpation ring do not constitute a modification or alteration that was the sole proximate cause of the Plaintiff's injuries. The Defendant's have failed in their burden to show that the injections made by the doctor were the sole proximate cause and not merely a substantial contributing factor in causing Plaintiff injuries. Potter, 241 Conn. at 236. The doctor's actions were in accordance with the manufacturer's instructions and specifications he received from Mentor Corporation and Mentor's representative, prior to the case at hand. The area in which the doctor injected the needle was to be self-sealing. The doctor had not received any other information from Mentor contrary to that. Defendant claims that the PIDS sheet warns against injecting in the palpation ring. The Defendant reasonably should have known or anticipated that the PIDS when opened in the operating room does not reach the doctor. The Defendant reasonably should have anticipated that such information or instructions

to the doctor should have been provided in other literature and through its own representative when marketing the product, in order to avoid injury to the Plaintiff.  A fair and reasonable mind will find that Defendant's failure to warn did cause the Plaintiff's injuries.

## VII.   PLAINTIFF'S PRODUCT LIABILITY CLAIM SURVIVES BECAUSE SHE HAS PROVEN DAMAGES

The plaintiff is entitled to damages because she has established a causal relationship between the injury and the physical condition, which resulted from it. "Expert testimony is not always mandatory if the medical condition is obvious or common in everyday life . . . .This is especially true if one is testifying about his own physical condition." (internal citations omitted) Aspiazu v. Orgera, 205 Conn. 623, 631 (1987).

Expert opinion cannot be based on "conjecture or surmise but must be 'reasonably probable.'"  Aspiazu, 205 Conn. 623 at 632 (citing, Witkowski v. Goldberg, 115 Conn. 693, 696, 163 A. 413 (1932).  "[W]e do not believe that it is mandatory to use 'talismanic words' or 'the particular combination of magical words represented by the phrase 'reasonable degree of medical certainty [or probability] . . . . there is no question that, to be entitled to damages, a plaintiff must establish the necessary causal relationship between the injury and the physical or mental condition that [she] claims resulted from

27

it." (internal citations omitted) <u>Aspiazu</u>, 205 Conn. 623 at 632-633 (<u>citing</u>, <u>Boland v.</u>

<u>Vanderbilt</u>, supra, 140 Conn. 520 102 A.2d 362 (1953).

The Plaintiff has established that her injuries bear a causal relationship to her

condition through her testimony and Dr. Foster's testimony.  Dr. Foster is in the best

position as the Plaintiff's treating physician to testify to that fact.  Dr. Foster, in achieving

best results, uses the tissue expander followed by a breast implant.  Dr. Foster Depo., 26.

In this case, because of the leakage from the expander, the doctor was unable to obtain

the desired expansion necessary for the Plaintiff.   As a result, the doctor was forced to

use an expandable implant (spectrum implant) instead of a nonexpandable "regular

permanent" implant, which was the desire course.  Dr. Foster's Depo., p. 61-62, 72-72,

134.  Because the expander was defective the Plaintiff had to endure additional injections

to obtain her desired size.

The Plaintiff was emotionally, mentally, and physically injured as a result of the

product defect.  The doctor in his testimony states and his medical notes confirmed that

the Plaintiff was upset because the expander continued to leak.  Dr. Foster's Depo., p.

110.  The doctor testified that after the left tissue expander was removed the Plaintiff

continued to experience complications related to the left tissue expander. Dr. Foster

testified in his deposition that there was a possibility the Plaintiff could have more

difficulty with capsular contracture or infection because the left side was entered into so

many times.  Dr. Foster's Depo., 117-118.  The doctor is also prepared to testify that the

subsequent complications experienced by the Plaintiff were possibly related to the

deflation of her left expander.  Dr. Foster's Depo., p. 125.  The Plaintiff continued to

experience tightness of the implants and capsular contracture (Dr. Foster's Depo., p. 128-

29), which normally may cause capsules to form around an implant, but they do not

normally contract.[7]  Dr. Foster's Depo. P. 126.  The doctor relates the tight capsules to

the Plaintiff's left tissue expander deflation.  Dr. Foster's Depo., p. 129.  The doctor

further relates the Plaintiff's staph infection to the deflation of her left tissue expander.

Dr. Foster's Depo., p. 134, 136.

        The Plaintiff will also testify to her condition as a result of the expander's

leakage.  The Plaintiff has experienced cosmetic damage such as scarring, adhesion,

bulges and bump, as a result of the tissue expander. Plaintiff's Depo., p. 38-39.  The

Plaintiff testified at her deposition that 99 % (percent) of her cosmetic damage is to her

left side.  Pltf's Depo., 40.  The Plaintiff relates her staph infection to the tissue expander,

because but for having to go to the hospital she would not have had the infection.  Pltf's

Depo., p. 38.  Plaintiff further testified to experiencing an odd sensation to her left side

(Pltf's Depo., p. 89); a pulling pain to her left side (Pltf's Depo, p. 91); muscle pain and

---

[7] "Capsular contracture is an extension of the normal healing that would occur.  Normally
you would have a capsule form around an implant, but it doesn't normally contract."  Dr.
Foster's Depo., p. 126.

spasms to the left side (Pltf's Depo., p. 90, 172); headaches and hair loss (Pltf's Depo., p. 172); that her boyfriend would sit up with her while she was in tears from the pain and that she was taking medications every two hours to assist with the pain (Pltf's Depo., p. 172); and that the Plaintiff suffered great physical pain, mental anguish, nervousness, loss of sleep and loss of appetite (Pltf. Depo., p. 183-84.

The Plaintiff has established a causal relationship between the injury and her physical and mental condition through both the doctor's testimony and her own. Therefore, the Plaintiff's product liability claim survives Defendant's motion for summary judgment because she has proven damages.

## CONCLUSION

Therefore, for the reasons asserted herein, the undersigned Plaintiff, Tammy Allen, respectfully requests that this honorable Court deny the Defendant Mentor Corporation's motion for summary judgment.

Respectfully submitted,
THE PLAINTIFF,
TAMMY ALLEN

BY:_____
EDWARD G. FITZPATRICK
Fitzpatrick, Mariano & Santos, P.C.
203 Church Street
Naugatuck, CT 06770
Telephone: 203-729-4555
Federal Bar No.: ct 06708

30

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, and sent via facsimile on March 21, 2005 to the following:

Ward J. Mazzucco, Esq.
Frances Codd Slusarz, Esq.
CHIPMAN, MAZZUCCO, LAND & PENNAROLA, LLC
30 Main Street, Suite 204
Danbury, CT 06810-3043

Edward J. Sebold, Esq.
John Q. Lewis, Esq.
Dustin B. Rawlin, Esq. (Pro Hac Vice)
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114

This is to certify that a copy of the foregoing was emailed, pursuant to their request, on March 19, 2005 to the following:

DBRAWLIN@JONESDAY.COM

_____
EDWARD G. FITZPATRICK